UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| KATHY J. KEMP,<br>    Plaintiff<br>v.<br>NANCY A. BERRYHILL[1], Acting Commissioner of Social Security,<br>    Defendant. | Case No. 8:16-cv-01473-GJS<br><br>**MEMORANDUM OPINION AND ORDER** |

## INTRODUCTION

Plaintiff Kathy J. Kemp appeals from the Commissioner's denial of Social Security Disability Benefits ("DIB"). Plaintiff alleges disability since May 25, 2012, based on a number of physical ailments that are not at issue in this appeal, as well as mental health issues including depression and anxiety. The Social Security Administration denied Plaintiff's application initially on December 23, 2013, and on reconsideration on April 22, 2014. Plaintiff requested a hearing before an Administrative Law Judge ("ALJ"), which was held on April 6, 2015. The ALJ

---

[1] The Court notes that Nancy A. Berryhill became the Acting Commissioner of the Social Security Administration on January 23, 2017. Accordingly, pursuant to Rule 25(d) of the Federal Rules of Civil Procedure, the Court orders that the caption be amended to substitute Nancy A. Berryhill for Carolyn W. Colvin as the defendant in this action.

issued an unfavorable opinion on May 27, 2015. The Appeals Council denied review, and this appeal followed. The parties consented to proceed before the undersigned Magistrate Judge. Briefing is complete and the case ready for disposition.

Plaintiff presents three issues for review: whether the ALJ erred (1) in his evaluation of Plaintiff's credibility and subjective symptoms; (2) in finding that Plaintiff's mental health impairment was not severe at step 2 of the evaluation process; and (3) in his alleged failure to address medical opinions from the state agency reviewing physicians. In order to avoid repetition and for additional reasons, the Court addresses these issues in a different order than did the parties. For the reasons set forth below, the Court affirms the decision of the ALJ.

## GOVERNING STANDARD

Under 42 U.S.C. § 405(g), the Court reviews the Commissioner's decision to determine if: (1) the Commissioner's findings are supported by substantial evidence; and (2) the Commissioner used correct legal standards. *See Carmickle v. Commissioner*, 533 F.3d 1155, 1159 (9th Cir. 2008); *Hoopai v. Astrue*, 499 F.3d 1071, 1074 (9th Cir. 2007). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (internal citation and quotations omitted); *see also Hoopai*, 499 F.3d at 1074.

Even if Plaintiff shows that the ALJ committed legal error, "[r]eversal on account of error is not automatic, but requires a determination of prejudice." *Ludwig v. Astrue,* 681 F.3d 1047, 1054 (9th Cir. 2012). "[T]he burden of showing that an error is harmful normally falls upon the party attacking the agency's determination." *Molina v. Astrue,* 674 F.3d 1104, 1111 (9th Cir. 2012) (internal citation omitted). "ALJ errors in social security cases are harmless if they are inconsequential to the ultimate nondisability determination[.]" *Marsh v. Colvin*, 792 F.3d 1170, 1173 (9th Cir. 2015) (internal quotation omitted).

**BACKGROUND FACTS**

Plaintiff claimed several medically determinable physical impairments that are not at issue in this appeal. Of those impairments, the ALJ found only Plaintiff's lumbar degenerative disc disease to be severe. [AR 34.] Plaintiff also claimed that she stopped working as of the alleged onset date due to job-related stress and anxiety, and that she had developed depression due to the deaths of her husband, her mother, and her father-in-law within an 18-month period. [*Id.*]

In his decision, the ALJ noted that Plaintiff was diagnosed with lumbar degenerative disc disease; hypothyroidism; plantar fasciitis; has a history of obesity; and complained of stress and depression as of her alleged onset date, although he also noted that she first began seeking mental health treatment two years after her alleged onset date. [AR 34.] The ALJ found Plaintiff's lumbar degenerative disc disease to be severe, but found that each of Plaintiff's remaining impairments had only mild to moderate impact on her ability to do basic physical or mental work activities. [*Id.*]

Based on Plaintiff's testimony and the ALJ's review of the medical records, the ALJ determined that Plaintiff has the residual functional capacity ("RFC") to perform light work, specifically as follows:

> [S]he can lift and/or carry 10 pounds frequently and 20 pounds occasionally; she can stand and/or walk for at least six hours of an eight-hour workday; she can sit for six hours out of an eight-hour workday. She can frequently balance, stoop, kneel, crouch, crawl, and climb ropes and stairs; and she can occasionally use ladders, ropes, and scaffolds.

[AR 37.][2]

---

[2] The ALJ did not include any specific limitations related to Plaintiff's mental health impairment, but noted that his assessment of Plaintiff's RFC "reflects the degree of limitation" he found "in the 'paragraph B' mental function analysis" he conducted when considering the severity of Plaintiff's diagnosed impairments (*i.e.*, in his step two analysis). The paragraph B criteria include four broad functional areas: activities of daily living; maintaining social functioning; maintaining concentration,

3

In making both his step two determination and crafting Plaintiff's RFC, the ALJ summarized the medical evidence of record and opinions relevant to the issue of Plaintiff's mental health as follows:[3]

- **Dr. Shelly Heidelbaugh**, Plaintiff's primary care physician, indicated that Plaintiff "reported stress, anxiety, and depressive symptoms" in June 2012. Dr. Heidelbaugh prescribed Prozac, which, in June 2013, claimant noted was helping. [AR 35 (internal citations omitted).] Dr. Heidelbaugh opined that Plaintiff was "unable to perform her regular or customary work" because of anxiety and depression. [*Id.*] The ALJ gave "little weight" to this part of Dr. Heidelbaugh's opinion, noting that Dr. Heidelbaugh was not a mental health specialist, and that her opinion was prepared in connection with Plaintiff's application for State disability benefits, which are not based on the same criteria used to determine eligibility for DIB. [*Id.*] The ALJ also noted that Dr. Heidelbaugh did not document any "ongoing, significant mental status examination findings." [*Id.*]

- **Dr. Fazeela Baqai**, Plaintiff's endocrinologist, noted in November 2012 that claimant was depressed and had poor judgment, but was not paranoid and did not display diffuse anxiety. Dr. Baqai noted that Plaintiff had normal affect, was alert and oriented, and had normal memory. Dr. Baqai noted in a later report that Plaintiff was doing better and was taking care of her young grandchild. [AR 35 (internal citations omitted).]

---

persistence, or pace; and episodes of decompensation of extended duration. The ALJ's consideration of the evidence of record on this subject is discussed *infra*.
[3] Given that Plaintiff challenges only the ALJ's findings related to her alleged mental health related impairments, the Court will not address the record evidence considered related to Plaintiff's physical impairments.

4

- **Dr. John Weinstein**, a psychiatrist Plaintiff began seeing in July 2014 (her first time seeking mental health treatment), diagnosed Plaintiff with "major depressive disorder, single episode, moderate-to-severe, secondary to prolonged bereavement." He quoted Plaintiff as saying that she lost her mother, husband, and father-in-law within an 18-month period and that she told him she quit her job to take care of her husband when he was ill. Dr. Weinstein noted on three occasions that Plaintiff presented with depressed mood and her speech was soft or slow, but his findings were otherwise unremarkable. [AR 34, 35 (internal citations omitted).]
- **Sandra Turner, MFT**, a psychotherapist, also observed Plaintiff beginning in 2014, two years after her alleged onset date. Her notes were consistent with those of Dr. Weinstein. [AR 35.]
- **Beth Teegarden, D.O.**, a psychiatric consultative examiner, "observed that Plaintiff was tearful, though pleasant and cooperative," but also found that she had "normal thought processes, alertness, orientation, and no deficits in memory." [AR 36 (internal citations omitted).] Plaintiff told Dr. Teegarden that she did household chores, ran errands, managed her own money, and assisted with care of her granddaughter and family pets. Dr. Teegarden opined that Plaintiff had moderate limitations in following detailed instructions or responding to work pressure, but did not note any significant cognitive defects. Additionally, Dr. Teegarden opined that Plaintiff had mild-to-no limitations in areas such as social functioning, responding to workplace changes, and engaging in daily activities. [AR 36 (internal citations omitted).] The ALJ gave "some weight, but not significant weight," to Dr. Teegarden's opinion.

- **State Agency Physicians,** Drs. Heather Barrons (a psychologist) and E. Singh (a psychiatrist), based their opinions on those of Dr. Teegarden. The ALJ thus gave "some weight, but not significant weight, to the State agency psychological consultants, whose assessments reflect Dr. Teegarden's opinion." [AR 37, citing to the reports of Drs. Barrons and Singh].

Based on RFC above, the ALJ found, that Plaintiff was capable of performing her past relevant work. [AR 39.]

## DISCUSSION

### I. The ALJ's Determination That Plaintiff Was Not Fully Credible Is Supported By At Least One Clear And Convincing Reason.

"Where, as here, an ALJ concludes that a claimant is not malingering, and that she has provided objective medical evidence of an underlying impairment which might reasonably produce the pain or other symptoms alleged, the ALJ may reject the claimant's testimony about the severity of her symptoms only by offering specific, clear and convincing reasons for doing so." *Brown-Hunter v. Colvin*, 806 F.3d 487, 492-93 (9th Cir. 2015) (internal quotation omitted). Even if "the ALJ provided one or more invalid reasons for disbelieving a claimant's testimony," if he "also provided valid reasons that were supported by the record," the ALJ's error "is harmless so long as there remains substantial evidence supporting the ALJ's decision and the error does not negate the validity of the ALJ's ultimate conclusion." *Molina*, 674 F.3d at 1115 (internal quotation omitted).

"The ALJ may consider many factors in weighing a claimant's credibility, including (1) ordinary techniques of credibility evaluation, such as the claimant's reputation for lying, prior inconsistent statements concerning the symptoms, and other testimony by the claimant that appears less than candid; (2) unexplained or inadequately explained failure to seek treatment or to follow a prescribed course of treatment; and (3) the claimant's daily activities." *Tomasetti v. Astrue*, 533 F.3d

1035, 1039 (9th Cir. 2008) (internal citations and quotations omitted); *see also Thomas v. Barnhart*, 278 F.3d 947, 958-59 (9th Cir. 2002) (explaining that acceptable bases for credibility determination include (1) the claimant's reputation for truthfulness; (2) inconsistencies in the claimant's testimony or between his testimony and conduct; (3) claimant's daily living activities; (4) claimant's work record; and (5) testimony from physicians or third parties concerning the nature, severity, and effect of claimant's condition).

Plaintiff claimed that she was unable to work due to both physical and mental limitations, asserting, *inter alia,* that low back pain caused by standing or walking required her to sit after only ten or fifteen minutes of activity, but that she could then only sit for a maximum of twenty minutes. [AR 38, 69-71]. She stated that her medication made her tired, but did not testify about any specific workplace limitations (for example, inability to concentrate or to follow detailed instructions) that are attributable to her medically determinable mental impairments. [AR 59].

In this appeal, Plaintiff argues generally that the ALJ erred in finding her testimony regarding the limiting effects of her impairments to be less than fully credible. She does not, however, challenge the ALJ's RFC finding that she was capable of much more, physically, than what she claimed she was able to do in her testimony. Thus, Plaintiff has, at a minimum, waived any argument that she was completely credible. Plaintiff also mischaracterizes the ALJ's credibility analysis, stating that the ALJ merely "summarize[ed] the medical evidence of record and/or Plaintiff's testimony," and "made no other meaningful findings and/or comments." [Pltf.'s Br. at 9]. To the contrary, based on a detailed analysis of the medical records (including evidence submitted post hearing), statements Plaintiff made to medical providers contained in those records, and Plaintiff's testimony at the hearing, the ALJ found her testimony inconsistent with her extra-judicial statements. [AR 38.]

7

For example, Plaintiff told her doctor – one she saw for mental health issues for the first time some two years after her alleged onset date – that she left work to care for her husband who had been diagnosed with cancer. [AR 334]. At the hearing, however, she testified that she left her job due to "stress and anxiety" 18 months after a new dentist took over the dental practice for which she worked,[4] and denied that she left work to care for her husband. [AR 56-57.] She admitted, though, that he passed away less than a year after she quit work (her alleged onset date). [AR 58.] This stark inconsistency about a key issue is particularly telling, because the first statement, made to her physician, would not support a finding of disability, while the statement made in the proceedings appears to be designed to support a finding that anxiety prevents Plaintiff from working.[5] The inconsistencies in her statements, coupled with Plaintiff's failure to challenge the ALJ's conclusion that she overstated her physical limitations, demonstrate that the ALJ had at least one clear and convincing reason supporting his finding that Plaintiff was not fully credible. Thus, no further analysis is required and this issue does not warrant remand.

**II.     Any Error In The ALJ's Step Two Analysis Was Harmless.**

At step two of the sequential evaluation process, a plaintiff has the burden to present evidence of medical signs, symptoms, and laboratory findings that establish a medically determinable physical or mental impairment that is severe and can be

---

[4] Notably, she also testified that she felt stressed because she was "treated unfairly" by the new dentist, who also "changed her job duties." [AR 56-57 (testifying also that "everyone has left since then".] While Plaintiff may be unable to tolerate perceived abusive behavior by her new employer, these reasons do not support a finding that she is unable to work at all. In fact, Plaintiff testified that she looked for additional work at the time, but did not get any offers. [AR 58.]

[5] As noted above, Plaintiff also testified that she was not able to sit or stand for any significant period of time, but, inconsistently, claimed that she was physically capable of performing her job duties as of her alleged onset date and looked for other work at the time.

expected to result in death or last for a continuous period of at least 12 months. *Ukolov v. Barnhart*, 420 F.3d 1002, 1004-05 (9th Cir. 2005) (citing 42 U.S.C. §§ 423(d)(3), 1382c(a)(3)(D)); *see* 20 C.F.R. §§ 404.1520, 404.1509. Substantial evidence supports an ALJ's determination that a claimant is not disabled at step two when "there are no medical signs or laboratory findings to substantiate the existence of a medically determinable physical or mental impairment." *Ukolov*, 420 F.3d at 1004-05 (citing SSR 96-4p). An impairment may never be found on the basis of the claimant's subjective symptoms alone. *Id.* at 1005.

Step two is "a de minimis screening device [used] to dispose of groundless claims." *Smolen v. Chater*, 80 F.3d 1273, 1290 (9th Cir. 1996). Applying the applicable standard of review to the requirements of step two, a court must determine whether an ALJ had substantial evidence to find that the medical evidence clearly established that the claimant did not have a medically severe impairment or combination of impairments. *Webb v. Barnhart*, 433 F.3d 683, 687 (9th Cir. 2005); *see also Yuckert v. Bowen*, 841 F.2d 303, 306 (9th Cir. 1988) ("Despite the deference usually accorded to the Secretary's application of regulations, numerous appellate courts have imposed a narrow construction upon the severity regulation applied here."). An impairment or combination of impairments is "not severe" if the evidence established only a slight abnormality that had "no more than a minimal effect on an individual's ability to work." *Webb*, 433 F.3d at 686 (internal citation omitted).

Even if an ALJ errs by finding one or more of a plaintiff's alleged impairments nonsevere, such error is harmless if he nevertheless considers the impairments when determining the plaintiff's RFC at step four. *See Lewis v. Astrue,* 498 F.3d 909, 911 (9th Cir. 2007) (failure to address particular impairment at step two harmless if ALJ fully evaluated claimant's medical condition in later steps of sequential evaluation process); *see also Stout v. Commissioner,* 454 F.3d 1050, 1055

(9th Cir. 2006) (ALJ's error harmless when "inconsequential to the ultimate nondisability determination").

After an extremely detailed analysis that included examination of all pertinent medical records and specific consideration of the four functional areas known as the "paragraph B" criteria [AR 34-36], the ALJ found that "while the claimant's depression is a medically determinable impairment, it does not cause more than minimal limitation in her ability to perform basic mental work and activities and is therefore nonsevere." [AR 35, 36.][6] Although the ALJ did not find Plaintiff's mental issues to be severe, he nevertheless considered them in determining her RFC. [AR 37 ("[T]he following residual functional capacity assessment reflects the degree of limitation the undersigned has found in the 'paragraph B' mental function analysis.").]

In this case, even if the ALJ erred at step 2 (which the Court does not conclude), because step 2 is the "gatekeeping" step designed to dispose of groundless claims at an early stage, any such error is harmless. The ALJ continued his analysis, including performing further analysis of the various medical providers' evaluations, records, and opinions related to Plaintiff's mental health. Although the ALJ ultimately chose not to include specific limitations related to Plaintiff's mental health issues in Plaintiff's RFC, he nevertheless specifically considered those issues and the medical evidence related to them in crafting the RFC. Thus, remand is not warranted for this reason, either.

**III. The ALJ Properly Addressed The Opinions Of The State Agency Reviewing Physicians.**

Plaintiff contends that the ALJ "failed to acknowledge the opinions" of the State agency reviewing physicians, and "neglected to note [their] contrary

---

[6] As noted above, the ALJ also found Plaintiff's medically determinable impairments of hypothyroidism and obesity to be non-severe. [AR 34.] Those determinations are not challenged in this appeal.

10

opinions." [Pltf.'s Br. at 6.] Although the ALJ did not discuss the reviewing physicians by name, Plaintiff's contention is untrue.

State agency reviewing physicians do not see the claimant for benefits. As the nomenclature suggests, they review a claimant's medical records and form their opinions based solely on the records and opinions of the claimant's medical providers and, in cases such as this, of consulting physicians. Here, as the ALJ correctly noted, both State agency physicians based their opinions that Plaintiff was limited in her ability to work (ultimately leading to the conclusion that she could not perform her past work, but could adjust to new work) on the records and analysis of Dr. Teegarden. [AR 36-37, citing specifically to the opinions of Barrons and Singh, both of which summarize a report from S&L Medical Group – *i.e.,* Dr. Teegarden's opinion).] As noted above, the ALJ gave some but not substantial weight to Dr. Teegarden's opinion. [*Id.*] Plaintiff did not challenge the ALJ's assessment of Dr. Teegarden's opinion, and for good reason.

Specifically, the ALJ gave only limited weight to Dr. Teegarden's opinion that Plaintiff had moderate limitations in following detailed instructions or responding to work pressure, because there was "no support in the record" for this conclusion, given, in part, that "neither Dr. Teegarden nor Dr. Weinstein noted any significant cognitive defects and both assessed global assessment of functioning (GAF) scores of 60." [AR 36 (internal citations omitted).] The Court has reviewed the entirety of Dr. Teegarden's consultative examination report, and agrees wholeheartedly with the ALJ's assessment. Although Dr. Teegarden noted that Plaintiff presented as "tearful," she also noted that: Plaintiff was "pleasant and cooperative;" her speech was "normal" and she was "clear and coherent;" her thought processes and thought content were normal (no "looseness of association, thought disorganization, flight of ideas, thought blocking, tangentially or circumstantially"); she was alert and oriented as to "time, place, person and purpose;" she could recall 3 out of 3 objects both immediately and five minutes

11

1 | later, and could recall what she ate for breakfast, lunch, and dinner, as well as her
2 | birthday; and she had only positive outcomes in tests for "concentration and
3 | calculation" and "fund of information." In addition, her "insight and judgment"
4 | were fine. [AR 376-77]. There were no medical records for Dr. Teegarden to
5 | review, and the claimant was the sole source of information for the evaluation. [AR
6 | 374.]

Because the ALJ gave "some" but not "significant" weight to Dr. Teegarden's opinion, he also gave "some" but not "significant" weight to the reviewing physicians' opinions that were based on Dr. Teegarden's assessment. [AR 36-37.] The Court finds no error in this analysis.

## CONCLUSION

For all of the foregoing reasons, **IT IS ORDERED** that the decision of the Commissioner finding Plaintiff not disabled is AFFIRMED.

**IT IS SO ORDERED.**

DATED: September 8, 2017

_____
GAIL J. STANDISH
UNITED STATES MAGISTRATE JUDGE